UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONICA RAMIREZ, individually and on behalf of other persons similarly situated who were employed by OSCAR DE LA RENTA, LLC, or any other entities affiliated with or controlled by OSCAR DE LA RENTA, LLC,<br><br>    Plaintiffs,<br><br>    -against-<br><br>OSCAR DE LA RENTA , LLC, or any other entities affiliated with or controlled by OSCAR DE LA RENTA, LLC,<br><br>    Defendant. | Civil Action No.: 1:16 CV 07855 (RA)(DCF)<br><br><br><br>**ECF CASE** |

**DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................................1

II.  ARGUMENT .......................................................................................................................1

    A.   ODLR's Removal Is Timely ...................................................................................1

    B.   ODLR Has Established Jurisdiction Under CAFA ...................................................3

        1.   ODLR Has Established Minimal Diversity .................................................3

    C.   Ramirez Has Failed to Meet Her Burden To Establish Any of the
        Exceptions To CAFA Jurisdiction ..........................................................................6

        1.   Ramirez Cannot Establish That Two-Thirds Of The Class Are New
            York Citizens As Required For the "Local Controversy" and
            "Home State Controversy" Exceptions .......................................................6

        2.   Ramirez Cannot Establish the "Interest of Justice" Exception ..................10

III. CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blockbuster, Inc. v. Galeno*,
   472 F.3d 53 (2d Cir. 2006)..............................................................................................3

*Commisso v. PricewaterhouseCoopers LLP*,
   No. 11 Civ. 5713 (NRB), 2012 U.S. Dist. LEXIS 105151
   (S.D.N.Y. July 27, 2012) ................................................................................................8

*Cutrone v. Mortg.Electr. Registration Sys.*,
   749 F. 3d 137 (2d Cir. 2014)........................................................................................2, 3

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   135 S. Ct. 547 (2014).....................................................................................................7

*DiPonzio v. Bank of Am. Corp.*,
   No. 11-CV-06192, 2011 U.S. Dist. LEXIS 74158 (W.D.N.Y. July 11, 2011)......................3, 6

*Fields v. Sony Corp. of Am.*,
   No. 13 Civ. 6520 (GBD), 2014 U.S. Dist. LEXIS 109249
   (S.D.N.Y. Aug. 4, 2014) ......................................................................................... passim

*Glatt v. Fox Searchlight Pictures*,
   811 F.3d 528 (2d Cir. 2016)......................................................................................11, 12

*Grant v. Warner Music*,
   No. 13-04449 ...............................................................................................................13

*Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide Fin. Corp.*,
   654 F. Supp. 2d 192 (S.D.N.Y. 2009).................................................................................7

*Hakkila v. Consol. Edison Co. of N.Y., Inc.*,
   745 F. Supp. 988 (S.D.N.Y. 1990)......................................................................................9

*Henry v. Warner Music Grp.*,
   No. 13 Civ. 5031 (PGG), 2014 U.S. Dist. LEXIS 39309
   (S.D.N.Y. Mar. 24, 2014) ..............................................................................................12

*Kubin v. Miller*,
   801 F. Supp. 1101 (S.D.N.Y. 1992)....................................................................................9

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
   481 Fed. Appx. 622 (2d Cir. 2012)....................................................................................6

*Moreno et al. v. Sony Corporation of America, et al.*,
   No. 13-cv-05708 ..............................................................................................................13

*Norris v. People's Credit Co.*,
   Case No. 1:12CV3138, 2013 U.S. Dist. LEXIS 139327
   (N.D. Ohio Sept. 27, 2013) ................................................................................................7

*Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*,
   655 F.3d 358 (5th Cir. 2011) .............................................................................................7

*Raynor v. Shock Doctor, Inc.*,
   No. 3:08CV1705(WWE), 2009 WL 347576 (D. Conn. Feb. 11, 2009)................................9

*Richins v. Hofstra Univ.*,
   908 F. Supp. 2d 358 (E.D.N.Y. 2012) .............................................................................6, 9

*Rodriguez v. 5W Pub. Relations*,
   No. 156571/14, 2016 WL 4013990 (Sup. Ct. NY Cnty. July 26, 2016) ............................12

*Smith v. Manhattan Club Timeshare Ass'n*,
   No. 12 Civ. 6363(PKC), 2013 U.S. Dist. LEXIS 67835
   (S.D.N.Y. May 10, 2013)..............................................................................................1, 3, 8

*Wang v. Hearst Corp.*,
   617 Fed. Appx. 35 (2d Cir. 2015)..................................................................................11, 12

*Westerfeld v. Indep. Processing, LLC*,
   621 F.3d 819 (8th Cir. 2010) .............................................................................................7


**STATUTES AND RULES**

28 U.S.C. §§ 1446(b)(1) and (b)(3) ..........................................................................................2

Class Action Fairness Act, 28 U.S.C. §1332(d) .................................................................. passim

New York Civil Practice Law and Rules § 902 ..........................................................................5

New York Labor Law ........................................................................................................1, 5, 6, 12

New York Wage Theft Protection Act.........................................................................................5


**OTHER AUTHORITIES**

Lisa Nagele-Piazza, *2nd Cir. Adopts Test for Employee Status, Direct New Look
   at Fox Searchlight Interns*, Bloomberg BNA (July 6, 2015),
   http://www.bna.com/2nd-cir-adopts-n17179929053/.......................................................11

Mark S. Kittaka, *Unpaid Interns – Does Second Circuit's Amended Opinion in Fox Searchlight Help or Hurt Employers?*, The National Law Review (Feb 10, 2016), http://www.natlawreview.com/article/unpaid-interns-does-second-circuit-s-amended-opinion-fox-searchlight-help-or-hurt;.........................................................11

Recent Case, *Glatt v. Fox Searchlight Pictures, Inc. - Second Circuit Crafts "Primary Beneficiary" Test for Unpaid Interns*, 129 Harv. L. Rev. 1136 (2016), available at http://harvardlawreview.org/2016/02/glatt-v-fox-searchlight-pictures-inc/;.........................................................................11

## I.      INTRODUCTION

Plaintiff Monica Ramirez ("Plaintiff" or "Ramirez"), a former intern with Defendant

Oscar De La Renta LLC ("Defendant" or "ODLR"), filed a complaint (the "Complaint") on

behalf of herself and more than 670 other putative class members alleging claims under the New

York Labor Law ("NYLL") from August 2008 to the present for minimum wage, overtime and

failure to receive weekly wage statements and yearly wage notices relating to their internships.

ODLR has timely and properly removed this case from the New York Supreme Court pursuant

to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), which grants federal district

courts jurisdiction over class actions involving more than 100 class members, where the amount

in controversy exceeds $5 million, and in which there is minimal diversity – that is, where "any

member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C.

§1332(d)(2)(A).[1]  ODLR has amply satisfied these requirements, and in her effort at remand,

Plaintiff relies on nothing but the emptiest speculation and, at times, misleading statements about

the status of the litigation, which is in its infant stages, as well as the legal landscape for unpaid

intern class actions in state and federal courts.  Because Plaintiff does not proffer a shred of

evidence that could serve as a cognizable basis for remand, Plaintiff's motion should be denied.

## II.     ARGUMENT

### A.      ODLR's Removal Is Timely

To the extent Ramirez claims that ODLR cannot remove the case because of the status of

the litigation, her arguments misrepresent the posture of the case and also lack merit as a matter

of law.  First, Ramirez's suggestion that the parties have engaged in "extensive discovery," *see*

---

[1] *See also Smith v. Manhattan Club Timeshare Ass'n*, No. 12 Civ. 6363(PKC), 2013 U.S. Dist. LEXIS 67835, at **5
(S.D.N.Y. May 10, 2013) (CAFA amended the federal diversity jurisdiction statute to confer federal jurisdiction
over class actions where: (1) the proposed class contains at least 100 members ('numerosity' requirement); (2)
minimal diversity exists ('any member of a class of plaintiffs is a citizen of a State different from any defendant');
and (3) amount in controversy exceeds $5,000,000).

Dkt. 15 at 1, is untrue. No witnesses have been deposed, including Ramirez.[2] ODLR has

produced a handful of documents, and Ramirez has produced nothing but her resume. There has

been no e-discovery.

Even if the parties had actually exchanged significant written discovery or conducted any

depositions, such discovery would have no impact on the timeliness of ODLR's motion. It is

well-established that, where, as here, the Complaint does not set forth sufficient facts necessary

to determine whether removal is proper, "a defendant may remove a case when, upon its own

independent investigation, it determines the case is removable." *Cutrone v. Mortg.Electr.*

*Registration Sys.*, 749 F. 3d 137 (2d Cir. 2014); Notice at ¶ 7. In *Cutrone*, the Second Circuit

reversed the district court's finding that the defendant's notice of removal was untimely because

it was made more than 30 days after the filing of the complaint and held that where plaintiff's

papers do not trigger the 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) because

they fail to specify the amount of monetary damages sought "a defendant may remove a case

when, upon its own independent investigation, it determines that the case is removable." 749

F.3d at 139. Notably, the court held that "defendants have no independent duty to investigate

whether a case is removable" and "[i]f removability is not apparent from the allegations of an

initial pleading or subsequent document, the 30 day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3)

are not triggered." *Id*. at 143.

In *Cutrone*, the Second Circuit rejected the plaintiff's argument that allowing defendants

to remove outside of the 30-day time period could result in "gamesmanship" – an argument that

Ramirez advances here – and explained that if a plaintiff is concerned that a defendant may

strategically delay removal the plaintiff "need only provide to the defendant a document from

---

[2] In fact, although ODLR noticed her deposition, Ramirez refused to attend.

which removability may be ascertained." *Id*. at 147.  Here, ODLR did not "forum shop" or remove in bad faith as Ramirez speculates.  Rather, ODLR did exactly what was contemplated in *Cutrone*, and upon conducting an independent investigation, determined that this case was removable under CAFA and then filed its notice of removal.  ODLR had no obligation to do so any sooner.  The same conclusion should be reached in this case.  ODLR's motion is timely, and Ramirez's motion should be denied.

### B.    ODLR Has Established Jurisdiction Under CAFA

ODLR's initial burden is to establish that there is a "reasonable probability" that CAFA's requirements are met, which the Second Circuit likens to the "preponderance of the evidence" standard.  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58-59 (2d Cir. 2006); *DiPonzio v. Bank of Am. Corp.*, No. 11-CV-06192, 2011 U.S. Dist. LEXIS 74158 , at *5-7 (W.D.N.Y. July 11, 2011); *Smith*, 2013 U.S. Dist. LEXIS 67835 at **11, n. 2.   As shown in detail in ODLR's Notice of Removal ("Notice"), and more fully below, ODLR has established by a preponderance of the evidence – that is, more likely than not – that minimal diversity exists, and that the amount in controversy exceeds $5,000,000, particularly under the generous interpretation of the requirements that the law requires.[3]

### 1.    ODLR Has Established Minimal Diversity

To satisfy the diversity requirement under CAFA, ODLR only needs to show that there is a single potential class member, out of the more than 670 in the proposed class, who is domiciled outside of both Delaware (where ODLR is incorporated) and New York (where it has its principal place of business).   ODLR indisputably has satisfied this requirement.  Although

---

[3] There apparently is no dispute concerning the additional requirement that the putative class include at least 100 members; although in her complaint, Ramirez merely alleged that she believed there were at least 40 putative class members, *see* Compl. ¶ 17, Ramirez now concedes that there are at least 600 putative class members.  *See* Dkt. 15 at 6.

ODLR lacks records sufficient to establish the domicile of every student who interned during the relevant limitations period, which goes back to September 2008, ODLR has reviewed the residential address information for individuals who interned in 2016 provided through resumes and contact sheets.[4]   Not a single resume or contact sheet contained a Delaware address, and more than 40% had a non-New York address.   *See* Declaration of Valentina Santos at ¶ 3. Specifically, of the 67 interns in 2016 who disclosed contact information, 30 provided an out-of-state residential address.   The contact information in ODLR's possession demonstrates that dozens of class members are domiciled in states other than New York (and Delaware), and there is no basis in the record to conclude that this information is not representative of the putative class as a whole.   This is more than sufficient to establish the minimal diversity that CAFA requires.   *See* 28 U.S.C. § 1332(d)(2)(A)-(C); *see also* Notice at ¶¶ 9-10.

    **1.   ODLR Has Established That There is At Least $5 Million In Controversy**

       ODLR's analysis regarding the amount in controversy is based on Ramirez's allegations in her complaint regarding the duration and the number of hours "worked" during her internships. In attempting to refute ODLR's analysis, Ramirez simply abandons some of her allegations in the Complaint and ignores fundamental principles of wage and hour laws that increase the value of her claims. [5]   In her Complaint, Ramirez claims that she interned for 42.5 hours per week (8.5 hours per day for 5 days) from January through April (*i.e.*, for 17 weeks) and that she occasionally interned on Saturdays for an additional six hours.   *See* Compl. ¶¶32-33.

---

[4] As explained in Section II.C.1., *infra* and the cases cited therein, college students are generally considered to be domiciled in their home state, rather than in the state where they attend college.

[5] First, Ramirez ignores the fact that to the extent that she alleges she interned for more than 40 hours in a given week, she would be paid an overtime premium for those hours.   Ramirez also ignores her allegation in the Complaint that she occasionally interned an additional six hours per week on Saturdays.   Ramirez also fails to acknowledge that the minimum wage rate has significantly increased during the proposed class period. *See infra*, at n. 6.

Ramirez is seeking unpaid wages for 8 hours of regular pay and 2.5 hours of overtime (at a rate

of 1.5 times the regular rate of pay) for each of the 17 weeks of her internship and, based on her

allegation that she occasionally interned on Saturdays, ODLR assumes that she interned for an

additional six hours (of overtime) per week at least four times during her 17-week internship.

Ramirez holds herself out as a representative of the entire class, alleging that her situation is

factually and legally similar to those of other class members.  Therefore, it is proper to calculate

the average number of hours interned by the putative class based on the allegations of the class

representative herself.  *See* Compl. ¶2.   Applying the average applicable hourly minimum wage

rate of $7.67 to Ramirez's claims,[6] her damages for unpaid wages would total $5,976.75.

Multiplying that amount by approximately 670 putative class members,[7] the damages for alleged

unpaid wages to the class would total approximately $4,004,442.50.   The total unpaid wages

amount does not include pre-judgment interest or statutory penalties of $50 per week under New

York's Wage Theft Protection Act, the latter of which would increase the damages for each

internship during the time period from April 2011[8] to the present by approximately $850 ($50

per week for 17 weeks).[9]  Assuming that half of the 670 internships would be covered by the

Act, the total amount of damages would increase by almost $300,000.

---

[6] *See Fields v. Sony Corp. of Am.*, No. 13 Civ. 6520 (GBD), 2014 U.S. Dist. LEXIS 109249 (S.D.N.Y. Aug. 4, 2014) (applying the average applicable minimum wage rate for purposes of calculating amount in controversy under CAFA).  The relevant time period is August 2008 to the present.  The minimum wage in New York was $7.15 per hour from January 1, 2007 to July 23, 2009, $7.25 per hour from July 24, 2009 to December 31, 2013, $8.00 per hour from January 1, 2014 to December 31, 2014, $8.75 per hour from January 1, 2015 to December 31, 2015 and $9.00 per hour from January 1, 2016 through the present.

[7] Defendant originally alleged in the Notice that it had engaged approximately 600 interns since September 2008 but a subsequent review establishes that there are approximately 670 interns.

[8] The New York Wage Theft Protection Act went into effect in April 2011.

[9] Although Ramirez discusses at length the fact that she does not seek liquidated damages under the NYLL (because such damages are barred by CPLR § 902), she does seek statutory penalties under the New York Wage Theft Protection Act, which are distinct from liquidated damages.  *Compare* NYLL §198(1)(a) *with* NYLL §198(1)(d).

Ramirez also fails to account for attorneys' fees, which are properly included for purposes of calculating the amount in controversy under CAFA.  *See DiPonzio*, 2011 U.S. Dist. LEXIS 74158 (attorneys' fees can be included where an action is brought pursuant to the NYLL, which expressly allows for an award of an attorneys' fees).  Attorneys' fees in the amount of 33% (the percentage Ramirez herself uses in her motion) would be over $1.2 million, bringing the amount in controversy well over $5,000,000.[10]  *See Fields v. Sony Corp. of Am.*, No. 13 Civ. 6520 (GBD), 2014 U.S. Dist. LEXIS 109249 at *8 (S.D.N.Y. Aug. 4, 2014) ("Applying attorneys' fees to the approximately $4.2 million at issue in this case brings the total amount in controversy to as much as $5.6 million, satisfying the required jurisdictional amount under CAFA.").  Accordingly, ODLR easily satisfies the statutory threshold.

<p style="margin-left:2em;"><strong>C.</strong>     <strong><u>Ramirez Has Failed to Meet Her Burden To Establish Any of the Exceptions To CAFA Jurisdiction</u></strong></p>

<p style="margin-left:4em;"><strong>1.</strong>     <strong>Ramirez Cannot Establish That Two-Thirds Of The Class Are New York Citizens As Required For the "Local Controversy" and "Home State Controversy" Exceptions.</strong></p>

As ODLR has met CAFA's jurisdictional threshold, the burden shifts to Ramirez to establish the "local controversy" or "home state controversy" exception to CAFA by a preponderance of the evidence.  *Law Offices of K.C. Okoli, P.C. v. BNB Bank*, *N.A.,* 481 Fed. Appx.  622, 625 (2d Cir. 2012) ("'[T]here [is] no question that whenever the subject matter of an action qualifies it for removal, the burden is on [the] plaintiff to find an express exception' to removal jurisdiction.") (alteration in original) (quoting *Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 698 (2003)); *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358 (E.D.N.Y. 2012) (the

---

[10] Even if Ramirez only interned on two Saturdays during her internship, Defendants would still satisfy the amount in controversy because her damages for unpaid wages would be $5,841.75 and applying that to the 670 putative class members, the alleged unpaid wages would total approximately $3,913, 972.50.  Applying 33% of that amount (without statutory penalties) for purposes of attorneys' fees, the amount in controversy still exceeds $5 million.

preponderance of the evidence standard applies to determine whether an exception to CAFA

applies).

The Supreme Court has held that "no antiremoval presumption attends in cases invoking

CAFA, [which] Congress enacted to facilitate adjudication of certain class actions in federal

court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014).  In the spirit

of Congress's intent for CAFA jurisdiction to be broadly granted, "all CAFA's exceptions are to

be interpreted narrowly."  *Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide*

*Fin. Corp.*, 654 F. Supp. 2d 192, 195 (S.D.N.Y. 2009) (citing *N.J. Carpenters Vacation Fund v.*

*Harborview Mortg. Loan Trust*, 581 F. Supp. 2d 581, 588 (S.D.N.Y. 2008)). Once a party has

established CAFA's requirements, doubts should be resolved in favor of federal jurisdiction.

*Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010) ("[T]he party bearing

the burden of proof is not entitled to the benefit of the doubt. On remand, the District Court

should resolve any doubt about the applicability of CAFA's local-controversy exception against

[the party opposing removal]."); *Norris v. People's Credit Co.*, Case No. 1:12CV3138, 2013

U.S. Dist. LEXIS 139327, at *20 (N.D. Ohio Sept. 27, 2013) ("all doubts must be construed in

favor of federal jurisdiction when the other CAFA jurisdictional requirements are met.");

*Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (noting

local controversy exception is "narrow, with all doubts resolved in favor of exercising

jurisdiction over the case").

To establish either the "local controversy" or the "home state controversy" exception,

Ramirez must demonstrate that greater than two-thirds of the members of the putative class are

citizens of New York. To meet that burden, however, "pure speculation" is insufficient.

7

*Smith v. Manhattan Club Timeshare Ass'n*, No. 12 Civ. 6363 (PKC), 2013 U.S. Dist. LEXIS 67835 (S.D.N.Y. May 10, 2013); *See Fields*, 2014 U.S. Dist. LEXIS 109249, at \*11. Yet that is all that Ramirez offers. She fails to provide any testimony or documents and instead relies entirely on her own hypotheticals about what the facts and circumstances concerning hundreds of other individuals might be, without any evidence to suggest that her inventions are accurate. [11]

Ramirez begins by theorizing that because her "internship occurred within Defendant's New York headquarters, . . . it would be reasonable to assume the majority of class members were residents of the state." Dkt. 15 at 13.[12] That hypothesis fails for several reasons. First, as noted, Ramirez offers no evidence to support her suggestion. Second, she does not even bother to explain when she is assuming the putative class members were "residents of the state."[13] Third, Ramirez does not explain why it is "reasonable to assume" that college students who merely interned in New York likely settled here, when those students attended school at a variety of institutions across the country and lived outside New York as well. *See Fields*, 2014 U.S. Dist. LEXIS 109249 at \*11-12 (rejecting a similar theory proffered by plaintiff in support of her motion to remand).

---

[11] Ramirez's contention that somehow she is absolved of her burden of proof because Defendant has purportedly failed to comply with its discovery obligations is not only misleading but also without merit. Ramirez has no basis to conclude that Defendant has information regarding the "identities" of all putative class members and, as Defendant has previously stated, it does not have sufficient records to establish the domicile or "identity" of each putative class member. *See* Section II.B.2., *supra*; *see also* Declaration of Valentina Santos at ¶ 2. In any case, contrary to Ramirez's contention, the "identities" of the putative class members are not necessary or even relevant for purposes of removal.

[12] Ramirez's reliance on *Commisso v. PricewaterhouseCoopers LLP*, No. 11 Civ. 5713 (NRB), 2012 U.S. Dist. LEXIS 105151, \*21 (S.D.N.Y. July 27, 2012) is misplaced. In *Commisso*, the court assumed that a significant portion of the putative class members were New York citizens because the class was limited to individuals *permanently employed* in the New York office. *Id.* at \*19. This case is about individuals who *temporarily interned* with Defendant in New York, all of whom were college students at colleges and universities around the country.

[13] *See* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.")

For purposes of diversity, a person is a citizen of the state in which he or she is domiciled. *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 361 (E.D.N.Y. 2012). A person may only have one domicile at a time, and a domicile does not change until an individual "acquire[s] a new residence and intends to remain there." *Kubin v. Miller*, 801 F. Supp. 1101, 1110 (S.D.N.Y. 1992). There is no basis to conclude that a college student who interned in New York during the summer is a citizen of New York. In fact, as explained above, of the 67 students who interned with ODLR this past year who provided residential addresses, more than 40% listed non-New York residences on their resumes, suggesting that they are domiciled elsewhere. This type of evidence "may not reflect with perfect accuracy the current domicile" of each putative class member, but it is still "highly probative" of the residency of the purported class. *Richins*, 908 F. Supp. 2d at 363. In addition, to the extent interns provided university addresses in New York, those addresses are not dispositive or necessarily even probative because college students are generally domiciled in their home state rather than the state where they attend college. *See, e.g.*, *Raynor v. Shock Doctor, Inc.*, No. 3:08CV1705(WWE), 2009 WL 347576, at *1 (D. Conn. Feb. 11, 2009) ("Courts have recognized a presumption that a college student retains the domicile of his parents even where he travels outside of his home state for university and has no intention of returning to his home state."); *Hakkila v. Consol. Edison Co. of N.Y., Inc.*, 745 F. Supp. 988, 990 (S.D.N.Y. 1990) (third-year New York University student not domiciled in New York despite living in NYU housing, working in New York and registering to vote in New York).

Ramirez next hypothesizes that more than two-thirds of putative class members reside in New York because, "if a college student obtains an unpaid internship in the fashion industry in New York, he/she ultimately desires to settle in New York to pursue that career path." Dkt. 15 at

9

13.  Ramirez offers no basis for her striking declaration that she knows the intent of hundreds of

other students.  And even if that gross assumption were warranted, a "desire" to settle in New

York is no guarantee, or even evidence of, the actual outcome.  It is equally likely, considering

the complete lack of evidence, that a college student tried to find a job in the New York fashion

industry but was unsuccessful, or decided to move to Paris instead of New York to pursue a

career in fashion, or that she learned from her experience that she did not want to pursue a career

in fashion at all.  At least one other court has rejected the precise theory Ramirez proffers.  In

*Fields*, the court found the plaintiff's theory was unsubstantiated and could not satisfy the home

state or local controversy exceptions where "[t]he crux of Plaintiff's argument is that if a college

student seeks an internship in New York in the music or entertainment industry, she will try to

return to New York to begin a career in the same industry."  2014 U.S. Dist. LEXIS 109249 at

*11-12.[14]  Accordingly, Ramirez's notion that more than two-thirds of ODLR's former interns

are citizens of New York is unfounded and cannot serve as a basis for remand.

> **2.     Ramirez Cannot Establish the "Interest of Justice" Exception**

Ramirez also cannot satisfy the catch-all, discretionary exception of 28 U.S.C. §

1332(d)(3), which permits remand "in the interests of justice and looking at the totality of the

circumstances."[15]  As an initial matter, as noted above, CAFA should be broadly construed in

favor of federal jurisdiction once its threshold requirements are met, and exceptions such as the

---

[14] Ramirez's counsel also represented the plaintiff in *Fields*.

[15] The statutory factors to be considered are: "(A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3).

"interests of justice" provision are narrowly interpreted. *See* Section II.C*., supra*.  Further, the

factors listed in the catch-all exception favor federal jurisdiction, not remand.

First, to avail herself of the exception, she must demonstrate that "greater than one-third

but less than two-thirds" of the proposed class members are citizens of the State in which the

claims were brought.  As noted above, Ramirez offers no basis for a conclusion as to the current

domicile of any member of her proposed class.  *See* Pl. Brf. at 16 ("it can be assumed that more

than one third of the putative class members are New York citizens").  That failure alone renders

§1332(d)(3) inapplicable.

Even if Ramirez could justify an examination of the other factors in that section, those

factors favor federal jurisdiction.  For example, this case concerns "matters of national or

interstate interest," not merely questions of local concern. 28 U.S.C. §1332(d)(3)(A).  The legal

standards governing unpaid internships have been debated in multiple federal Circuits, and are

the subject of written opinions and guidance from the U.S. Department of Labor.   Recent

lawsuits and Circuit Court decisions in this area, particularly in *Glatt v. Fox Searchlight*

*Pictures*, 811 F.3d 528 (2d Cir. 2016) and *Wang v. Hearst Corp.*, 617 Fed. Appx. 35 (2d Cir.

2015), have garnered enormous press attention from national publications,[16] and the same issues

raised by those cases are raised here.  Colleges and universities across the nation that encourage

their students to pursue unpaid internships are interested in the legal standards this Court may

adopt and apply in this case. Companies that engage interns nationwide have similar interests.

---

[16] *See, e.g.*, Mark S. Kittaka, *Unpaid Interns – Does Second Circuit's Amended Opinion in Fox Searchlight Help or Hurt Employers?*, The National Law Review (Feb 10, 2016), http://www.natlawreview.com/article/unpaid-interns-does-second-circuit-s-amended-opinion-fox-searchlight-help-or-hurt; Recent Case, *Glatt v. Fox Searchlight Pictures, Inc. - Second Circuit Crafts "Primary Beneficiary" Test for Unpaid Interns*, 129 Harv. L. Rev. 1136 (2016), available at http://harvardlawreview.org/2016/02/glatt-v-fox-searchlight-pictures-inc/; Lisa Nagele-Piazza, *2nd Cir. Adopts Test for Employee Status, Direct New Look at Fox Searchlight Interns*, Bloomberg BNA (July 6, 2015), http://www.bna.com/2nd-cir-adopts-n17179929053/.

Even among companies in New York, this case raises questions of multistate importance, because entities such as ODLR attract interns and intern candidates from across the nation.

Next, although Ramirez's claims will nominally be decided under New York law, rather than the laws of other states, there are no material differences between the New York state law standards for unpaid internships and those under federal law.  *See Glatt*, 811 F.3d 528 (2d Cir. 2016).   Again, this is not a matter of purely local interest; the Court's rulings on unpaid interns are likely to be of wide interest, even if they nominally apply New York law.  *See Henry v. Warner Music Grp.*, No. 13 Civ. 5031 (PGG), 2014 U.S. Dist. LEXIS 39309 (S.D.N.Y. Mar. 24, 2014) (finding the interests of justice exception did not apply and that NYLL claims brought by unpaid interns were of national importance).

Although Ramirez disclaims any effort to plead this case so as to avoid federal jurisdiction, the broader context and particularly the arguments set forth on pages 17-18 of Ramirez's brief at least call her position into question.   Ramirez says she had no basis for federal jurisdiction, but she could have brought this case under CAFA's grant of diversity jurisdiction.  She may have chosen not to do so because long before Ramirez filed her Complaint in state court, the Second Circuit had agreed to hear interlocutory appeals in two other unpaid intern class actions filed in this Court - *Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478(L), No. 13-4481(Con) and *Wang v. The Hearst Corp.*, No. 13-4480, which sought immediate appellate review of two decisions issued by different judges who reached opposite determinations as to the applicable legal standard for intern classification claims and whether class treatment of those claims is appropriate. [17]

---

[17] Ramirez also fails to acknowledge a recent New York State court decision issued prior to the filing of Defendant's Notice of Removal in which the court found that NYLL claims by unpaid interns that are essentially identical to those asserted here could not be maintained as a class action.  *See Rodriguez v. 5W Pub. Relations*, No. 156571/14, 2016 WL 4013990 (Sup. Ct. NY Cnty. July 26, 2016).  Accordingly, because there is no basis to

As to the remaining factors of 28 U.S.C. §1332(d)(3), there is no evidence that New York citizens predominate among the class members, as provided in §1332(d)(3)(E); and, contrary to Ramirez's claim, other class actions asserting similar claims have been filed in the three years preceding Ramirez's filing.[18]

## III.   CONCLUSION

ODLR has established that this case satisfies CAFA's requirements for removal, and Ramirez offers no evidence to sustain her burden of proving that the narrowly-construed exceptions to that jurisdiction apply.  ODLR respectfully requests that this Court deny Ramirez's motion to remand and maintain jurisdiction over the pending action.

Dated:  New York, New York                    PROSKAUER ROSE LLP
        November 21, 2016

                                             */s/ Elise M. Bloom*
                                             Elise M. Bloom
                                             Alychia Buchan
                                             Eleven Times Square
                                             New York, NY 10036-8299
                                             Phone: (212) 969-3000
                                             Fax: (212) 969-2900
                                             ebloom@proskauer.com
                                             abuchan@proskauer.com

                                             Mark W. Batten
                                             One International Place
                                             Boston, MA 02110-2600
                                             Phone: (617) 526-9600
                                             Fax: (617) 526.9899
                                             mbatten@proskauer.com

                                             *Attorneys for Defendant ODLR*

---

conclude that Ramirez's class claims will be more successful in state court than in federal court Ramirez's allegations of Defendant's purported "forum-shopping" are even further undermined.

[18] Many of those cases have been filed in this Court by Ramirez's counsel, including *Moreno et al. v. Sony Corporation of America, et al.*, No. 13-cv-05708; *Fields v. Sony Corporation of America*, No. 13-cv-06520-GBD; *Grant v. Warner Music*, No. 13-04449.