USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/12/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONICA RAMIREZ, *individually* and *on behalf of other persons similarly situated who were employed by Oscar De La Renta, LLC, or any other entities affiliated with or controlled by Oscar De La Renta, LLC*,

Plaintiff,

v.

OSCAR DE LA RENTA, LLC, *or any other entities affiliated with or controlled by Oscar de la Renta, LLC*,

Defendant.

No. 16-CV-7855 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

In 2009, Plaintiff Monica Ramirez worked as an unpaid intern for Defendant Oscar De La Renta ("ODLR"), a fashion and apparel firm based in New York. Ramirez filed a putative class action against ODLR in the Supreme Court of New York, claiming that ODLR violated various provisions of the New York Labor Law. ODLR removed the action to this Court under the Class Action Fairness Act of 2005 ("CAFA"). Ramirez moves to remand the action to state court. For the reasons set forth below, Ramirez's motion is denied.

## BACKGROUND

On September 3, 2014, Ramirez filed a complaint in the Supreme Court of New York. *See* Notice of Removal Ex. A (Compl.) (Dkt. 1). In the complaint, Ramirez alleges that, from approximately August 2008 through the date on which she filed her complaint, ODLR "wrongfully withheld wages from her and similarly situated individuals who worked for [ODLR]." *Id.* ¶ 2. Ramirez alleges that she worked at ODLR's Manhattan office "from approximately January of

2009 through April of 2009." *Id.* ¶ 7. During this period, Ramirez "typically worked five days each week, and on occasion six days a week," and "routinely worked eight and one half hours each day." *Id.* ¶ 33. Ramirez claims that she was "not paid any wages." *Id.* ¶ 35. She asserts three claims under the New York Labor Law: (1) failure to pay minimum wage, (2) failure to pay wages, and (3) failure to provide wage notices and statements. *See id.* ¶¶ 36–60. She seeks to recover unpaid wages, statutory penalties, interest, attorney's fees, and costs. *See id.* ¶¶ 45, 53, 60; *see also id.* at 12.

On October 7, 2016, ODLR removed the action to this Court under CAFA. ODLR's notice of removal alleges that it "learned that this action satisfies the CAFA requirements" for removal "only after commencing its own independent investigation." Notice of Removal ¶ 7. The notice of removal further alleges that Ramirez's proposed class contains approximately 600 individuals, *see id.* ¶ 8, and that the amount in controversy "exceeds $5 million," *id.* ¶ 11.

On November 7, 2016, Ramirez moved to remand this action to state court. *See* Mot. to Remand (Dkt. 16). On November 21, 2016, ODLR filed a brief in opposition to the motion. *See* Def. Opp'n Mem. (Dkt. 20). On December 2, 2016, Ramirez filed a reply. *See* Pl. Reply Mem. (Dkt. 26).

## LEGAL STANDARD

"CAFA gives federal courts jurisdiction over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)); *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013). "In CAFA cases, the defendant bears the burden of establishing federal subject matter jurisdiction." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*,

2

749 F.3d 137, 142 (2d Cir. 2014). The defendant must demonstrate a "reasonable probability" that CAFA's jurisdictional requirements are satisfied. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). "[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010).

## DISCUSSION

### A. Timeliness

Ramirez first argues that ODLR's notice of removal is untimely. *See* Pl. Mem. at 3–5 (Dkt. 18). Under 28 U.S.C. § 1446, removal is timely if it occurs within one of two 30-day periods. First, Section 1446(b)(1) requires a defendant to file a notice of removal within 30 days of service or receipt of a copy of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). Second, Section 1446(b)(3) provides that, "[i]f the case stated by the initial pleading is not removable," the defendant may file a notice of removal within 30 days of receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3); *see Cutrone*, 749 F.3d at 142.

In the CAFA context, the Second Circuit has adopted a "bright line rule," under which "the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000

3

can be ascertained." *Cutrone*, 749 F.3d at 145.[1] "[D]efendants have no independent duty to investigate whether a case is removable." *Id.* at 143; *accord Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 37 (2d Cir. 2010); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001). "Thus, a defendant is not required to consider material outside of the complaint or other applicable documents for facts giving rise to removability, and the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff provides facts explicitly establishing removability or alleges sufficient information for the defendant to ascertain removability." *Cutrone*, 749 F.3d at 145.

Nonetheless, a defendant must "apply a reasonable amount of intelligence in ascertaining removability." *Id.* at 143 (quoting *Moltner*, 624 F.3d at 37). While the Second Circuit has not precisely delineated the scope of the "reasonable amount of intelligence" standard, it has explained that "[a] pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support the removal petition," including "the amount in controversy and the address of each party" in the diversity context. *Moltner*, 624 F.3d at 36 (quoting *Whitaker*, 261 F.3d at 206). Other circuits have determined that this standard may require a defendant to perform simple calculations based on figures found in pleadings or other papers served by the plaintiff. *See, e.g.*, *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014) (holding that Section 1446's removal periods are triggered when the plaintiff provides "sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation");

---

[1] Other circuits have adopted similar standards for evaluating the timeliness of removal under Section 1446. *See, e.g.*, *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 74 (1st Cir. 2014); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823–24 (7th Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013); *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (per curiam).

4

*Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (holding that while "defendants need not make extrapolations or engage in guesswork" in ascertaining removability, "[m]ultiplying figures clearly stated in a complaint is an aspect of [their] duty" to apply a reasonable amount of intelligence (internal quotation marks omitted)). But "intelligence" should not be confused with "investigation": a defendant may be required to take out a calculator while reading a complaint, but he has no duty to review his files to uncover facts not alleged in a pleading or other paper served by the plaintiff.

Here, Ramirez did not serve ODLR with an initial pleading or other document that would trigger the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3). There is no dispute that neither Ramirez's complaint nor any other document served upon ODLR "explicitly specifies" the amount of damages she seeks. *Cutrone*, 749 F.3d at 145. Nor does Ramirez's complaint "set[] forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained" with a reasonable amount of intelligence. *Id.* In particular, the complaint does not allege a number of proposed class members that would yield an amount in controversy approaching $5 million. The complaint alleges only that "[t]he size of the putative class is believed to be in excess of 40 individuals." Compl. ¶ 17. With just 40 class members, the amount in controversy would not approach $5 million—indeed, using the methodology discussed below, the amount in controversy would fall below $500,000. Thus, even if ODLR had applied a "reasonable amount of intelligence" by "[m]ultiplying figures clearly stated in [the] complaint," it would not have ascertained that the amount in controversy meets CAFA's jurisdictional minimum. *Kuxhausen*, 707 F.3d at 1140. Accordingly, the 30-day removal periods of Section 1446 were not triggered. *See Cutrone*, 749 F.3d at 145.

Ramirez opposes this conclusion with three arguments. First, Ramirez argues that ODLR

failed to apply a "reasonable amount of intelligence" in ascertaining removability because it did not investigate the size of her proposed class. All ODLR had to do, Ramirez argues, was review its records to determine the number of interns it employed during the relevant period, then perform some straightforward calculations to ascertain the amount in controversy. Ramirez may be correct that determining the amount in controversy would not have required extensive effort on ODLR's part, but she is mistaken in arguing that ODLR had an obligation to look beyond her pleadings and other papers to ascertain removability. *See Intelligen Power Sys., LLC v. dVentus Techs. LLC*, 73 F. Supp. 3d 378, 381 (S.D.N.Y. 2014) ("It is well-settled that a defendant has no independent duty to investigate whether a case is removable."). Here, it was only through "independent investigation" that ODLR discovered that Ramirez's proposed class contains approximately 600 individuals—15 times more than Ramirez alleged in her complaint. *Compare* Compl. ¶ 17, *with* Notice of Removal ¶¶ 7, 8. However straightforward this investigation might have been, ODLR's failure to conduct it earlier provides no basis for concluding that removal was untimely.

Second, Ramirez argues that ODLR should have ascertained removability on the basis of her interrogatories and other discovery requests. *See* Pl. Mem. at 4. Ramirez notes, for example, that her first set of interrogatories asked ODLR to "[i]dentify each current and former individual classified as an intern" during the relevant period. Decl. in Supp. of Mot. to Remand Ex. C at 6 (Dkt. 17). To trigger the removal periods of Section 1446, however, Ramirez needed to provide ODLR information from which it could ascertain that the amount in controversy exceeds $5 million—not to ask for it. On the present record, it is not clear whether ODLR provided information responsive to Ramirez's interrogatories, and Ramirez does not argue that she ever

6

obtained a document specifying the size of her proposed class.[2] If Ramirez had obtained such a document, she could fairly argue that the 30-day removal period of Section 1446(b)(3) would begin to run once ODLR was served. *See, e.g.*, *Romulus*, 770 F.3d at 78–79 (holding that an employer's receipt of an e-mail from employees estimating the number of unpaid meal breaks for which the employees sought compensation triggered the removal period of Section 1446(b)(3)); *Maguire v. A.C. & S., Inc.*, 73 F. Supp. 3d 323, 326 (S.D.N.Y. 2014) (holding that a defendant could reasonably ascertain removability on the basis of the plaintiff's interrogatory responses). Here, however, Ramirez's interrogatories and other document requests did not contain facts from which ODLR could reasonably determine that the amount in controversy meets CAFA's jurisdictional minimum.

Finally, Ramirez argues that a defendant should be required to investigate the amount in controversy earlier in the litigation than ODLR did here. *See* Pl. Mem. at 4. In Ramirez's view, a defendant should not be permitted to stall an action for an extended period—in this case, two years—by failing to review its own records and determine whether the action is removable. This is particularly true where, as here, the defendant may be in a better position to uncover facts necessary to ascertain removability. While this argument is not without force, "[t]here are contrary policy arguments that Congress could have considered" in enacting CAFA. *Romulus*, 770 F.3d at

---

[2] Indeed, Ramirez's brief in support of her motion claims that "Defendant has refused to produce information to Plaintiffs about the size of the putative class." Pl. Mem. at 2. ODLR's response to Ramirez's interrogatories claims that her request for a list of its interns during the relevant period is, among other things, "overly broad and unduly burdensome." Decl. in Supp. of Mot. to Remand Ex. D at 13. It is not clear to the Court why ODLR did not provide Ramirez information responsive to her interrogatories, which are dated on March 4, 2015, before removing this action more than one and one-half years later. In any event, because there is no dispute that ODLR did not produce information regarding the size of Ramirez's proposed class, the Court need not consider whether ODLR's production of documents containing this information would have triggered the removal periods of Section 1446.

75. In particular, the "bright line" rule governing the timeliness of removal encourages plaintiffs to estimate damages early in a case and avoids "fact-intensive mini-trials" into "what the defendant should have investigated, or what the defendant should have discovered through that investigation." *Id.* at 75–76. Congress may also have found it appropriate to assign the task of identifying facts relevant to determining removability to the plaintiff, who generally serves as "master of the complaint" and bears the burden of investigating the facts underlying her claims. In any event, as the Ninth Circuit has explained, "plaintiffs are in a position to protect themselves." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013). "If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Id.* Thus, Ramirez's policy arguments may well be contrary to those Congress considered in enacting CAFA, and in any event provide no basis to depart from the "bright line rule" governing removal under Section 1446. *Cutrone*, 749 F.3d at 145.[3]

---

[3] Ramirez emphasizes that approximately two years elapsed between her initiation of this action and ODLR's notice of removal. To the extent that Ramirez believes that this period is simply too long for ODLR's removal to be deemed timely, she cites no statutory provision or case law in support of this claim. Aside from the two 30-day removal periods specified in 28 U.S.C. §§ 1446(b)(1) and (b)(3), there is no prescribed period in which a class action must be removed under CAFA. Indeed, although 28 U.S.C. § 1446(c)(1) generally provides that a diversity case may not be removed under Section 1446(b)(3) "more than one year after the commencement of the action," *id.* § 1446(c)(1), Section 1453(b) lifts this one-year time limit in the context of class actions. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the one-year limitation under section 1446(c)(1) shall not apply) . . . ."); *see also Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 776 (8th Cir. 2014) ("Regardless of how federal jurisdiction over a class action arises, § 1453(b) unambiguously provides that the one-year removal limit in § 1446(c)(1) does not apply."); *Blockbuster*, 472 F.3d at 56. Since Section 1453(b) clearly exempts class actions from the one-year removal period that applies in other diversity cases, it is reasonable to infer that Congress intended to permit defendants to remove some class actions more than one year after they were filed in state court. This statutory scheme thus provides little support for Ramirez's argument that a notice of removal cannot be found timely if filed two years after the

**B. Amount in Controversy**

Ramirez next argues that ODLR has not satisfied CAFA's amount-in-controversy requirement.[4] The Court disagrees.

In determining the amount in controversy under CAFA, "the claims of the individual class members shall be aggregated," and "those 'class members' include 'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.'" *Knowles*, 133 S. Ct. at 1348 (emphasis in original) (quoting 28 U.S.C. § 1332(d)(1)(D), (d)(6)). Courts "generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal." *Blockbuster*, 472 F.3d at 56–57. However, "[w]here the pleadings are inconclusive, courts may look to other evidence in the record." *Fields v. Sony Corp. of Am.*, No. 13-CV-6520 (GBD), 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014). As discussed above, the defendant need only demonstrate a "reasonable probability" that the amount in controversy exceeds $5 million. *Blockbuster*, 472 F.3d at 58.

Here, Ramirez seeks three forms of relief that may be considered in determining the amount in controversy: allegedly unpaid minimum wages, statutory penalties for ODLR's alleged failure to provide wage notices and wage statements, and attorney's fees.[5] With respect to Ramirez's claim for unpaid minimum wages, the complaint alleges that, "from approximately January of 2009 through April of 2009," Ramirez "typically worked five days each week, and on occasion

---

underlying state-court action began.

[4] Ramirez does not dispute that the other elements of CAFA jurisdiction are satisfied: the proposed class has more than 100 members, and the proposed class members are minimally diverse. *See* 28 U.S.C. § 1332(d)(2), (5)(B).

[5] Ramirez also seeks interest and costs, neither of which may be considered in calculating the amount in controversy for purposes of removal under CAFA. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, *exclusive of interest and costs*." (emphasis added)).

9

six days a week," and "routinely worked eight and one half hours each day." Compl. ¶¶ 7, 33. From January through April 2009, New York's minimum wage was $7.15 per hour. *See* N.Y. Lab. Law § 652(1). Assuming that Ramirez worked 8.5 hours each day, 5 days per week, excluding federal holidays but including 4 weekend days, from January 5, 2009 to April 30, 2009—a total of 86 days altogether—she is owed $5,227 in unpaid wages.[6]

The Court next extrapolates Ramirez's claim to the proposed class. ODLR's notice of removal alleges that Ramirez's proposed class includes approximately 600 individuals. *See* Notice of Removal ¶ 8.[7] Ramirez appears to allege a class period of 6 years, spanning from August 2008 to the filing of her complaint in September 2014. *See* Compl. ¶ 2. The applicable minimum wage varied during this period: it began at $7.15 per hour, increased to $7.25 per hour on July 24, 2009,[8] and increased again to $8.00 per hour on December 31, 2013. *See* N.Y. Lab. Law § 652(1). For purposes of this motion, the Court assumes that a proportionate number of proposed class members worked for ODLR during each of the periods in which these minimum wages applied. Thus, the Court assumes that 16 percent of proposed class members (or 96 individuals) worked for ODLR

---

[6] The Court assumes that Ramirez did not work on the two federal holidays during this period: Martin Luther King Day (January 19, 2009) and Presidents' Day (February 16, 2009).

[7] ODLR's opposition to Ramirez's motion to remand indicates that her proposed class includes 670 individuals. *See* Def. Opp'n Mem. at 5 & n.7 (Dkt. 20). However, since "the propriety of removal is to be determined by the pleadings at the time of removal," *Fed. Ins. Co. v. Tyco In'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006), the Court relies on ODLR's allegations in its notice of removal, rather than the revised allegations in its opposition to Ramirez's motion. In any event, under either of ODLR's estimates of the proposed class size, there is a reasonable probability that the amount in controversy exceeds CAFA's jurisdictional minimum.

[8] On July 24, 2009, the federal minimum wage increased to $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Pursuant to 12 N.Y.C.R.R. § 146-1.2(b), the federal minimum wage applies in New York when it exceeds the minimum wage set forth by the NYLL. Thus, from July 24, 2009 through December 30, 2013, New York's minimum wage was equal to the federal minimum wage of $7.25 per hour. *See* *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012).

from August 1, 2008 through July 23, 2009, when minimum wage was $7.15 per hour; 73 percent (or 437 individuals) from July 24, 2009 through December 30, 2013, when minimum wage was $7.25 per hour; and 11 percent (or 67 individuals) from December 31, 2013 through September 3, 2014, when minimum wage was $8.00 per hour.  Assuming that each proposed class member worked the same number of unpaid hours as Ramirez, ODLR owes a total of $3,209,363 in unpaid minimum wages.

Second, Ramirez seeks statutory penalties for ODLR's alleged failure to provide wage notices and statements. *See* Compl. ¶ 60.  Since April 9, 2011, the NYLL has required employers to provide employees a written notice of certain terms of their employment at the time of hiring. *See* N.Y. Lab. Law § 195(1)(a).  From April 9, 2011 through the end of the proposed class period, the NYLL provided that "[a]n employee who does not receive a wage notice within 10 business days of his first day of employment is entitled to recover $50 for each week of work that the violations occurred, up to a maximum of $2,500." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at \*29 (S.D.N.Y. June 9, 2016) (citing N.Y. Lab. Law § 198(1-b) (eff. Apr. 9, 2011 to Feb. 26, 2015)).  During this period, the NYLL also required employers to provide employees a statement containing certain information with each wage payment; if an employer failed to do so, the employee was entitled to $100 per work week, up to a maximum of $2,500. *See id.*; *see also* N.Y. Lab. Law §§ 195(3), 198(1-d) (eff. Apr. 9, 2011 to Feb. 26, 2015).  These provisions do not apply retroactively to violations occurring before April 9, 2011. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013).  Thus, these statutory penalties were available for approximately three and one-half years—or approximately 56 percent—of the proposed class period.  Assuming that a proportionate number of the proposed class members (i.e., 56 percent of the proposed class, or 335 individuals) are eligible to seek these penalties, and assuming further

11

that each of these proposed class members, like Ramirez, worked 17 weeks without receiving a wage notice or wage statement, each is entitled to approximately $750 in wage notice penalties and $1,700 in wage statement penalties.[9] Extrapolating these penalties to the assumed portion of the proposed class entitled to recover them, ODLR would be liable for $821,587 in statutory penalties, for a total of $4,030,950 when combined with damages for minimum wage violations.

Finally, Ramirez seeks attorney's fees. "Attorney's fees can be considered as part of the amount in controversy where they are anticipated or awarded in the governing statute." *Henry v. Warner Music Grp. Corp.*, No. 13-CV-5031 (PGG), 2014 WL 1224575, at *3 (S.D.N.Y. Mar. 24, 2014) (internal quotation marks omitted). "Because this action is brought pursuant to the NYLL, which expressly allows for an award of attorney's fees . . . attorneys' fees may be included in the calculation of the amount in controversy." *Id.* (citing N.Y. Lab. Law § 198). In wage-and-hour cases, including those brought under the NYLL, "[f]ee awards representing one third of the total recovery are common in this District." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016). Here, an award of one-third of the total recovery is $1,343,650. Combining damages for ODLR's alleged minimum wage violations with statutory penalties for its alleged failure to provide wage notices and statements, and including an attorney's fee award of one-third of the total recovery, the amount in controversy in this action is

---

[9] The NYLL provides that an employee is entitled to wage notice penalties if he or she does not receive a wage notice "within 10 business days of his or her first day of employment." N.Y. Lab. Law § 198(1-b). Accordingly, if an employee worked 17 weeks, the Court assumes that she was entitled to wage notice penalties beginning 10 business days after she began working—or penalties for 15 weeks altogether. The Court assumes that each eligible employee is entitled to a wage statement penalty for each of the 17 weeks she worked for ODLR, as the NYLL provides that wage statement penalties are to be awarded "for each work week that the violations occurred or continue to occur." N.Y. Lab. Law § 198(1-d) (eff. Apr. 9, 2011 to Feb. 26, 2015); *see also Inclan v. N.Y. Hosp. Grp.*, Inc., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (finding that plaintiffs were "entitled to statutory damages of $100 per work week, from April 9, 2011, through the end of each plaintiff's employment" for wage statement violations).

$5,374,600—an amount above CAFA's $5 million jurisdictional minimum.

Importantly, this amount does not include liquidated damages, which plaintiffs may ordinarily recover in NYLL actions. Specifically, at the beginning of the proposed class period, a plaintiff could recover "[a]n additional amount as liquidated damages equal to twenty-five percent of the total wages found to be due" if she proved that the employer's failure to pay required wages was "willful." *See* N.Y. Lab. L. § 198(1-a) (consol. 2008); *see also Gold*, 730 F.3d at 143; *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015). Effective November 24, 2009, the NYLL was amended to create a presumption that an employee was entitled to liquidated damages yet permit the employer to avoid this penalty by establishing that it had acted in good faith. *See* N.Y. Lab. L. § 198(1-a) (eff. Nov. 24, 2009); *see also Gold*, 730 F.3d at 143. Effective April 9, 2011, the NYLL was amended again to increase the amount of recoverable liquidated damages from 25 percent to 100 percent of any underpayment. *See Gold*, 730 F.3d at 143. As Ramirez correctly notes, however, her complaint did not seek liquidated damages—apparently because, had it done so, she would have been unable to maintain a state-court class action pursuant to New York Civil Practice Law and Rules (C.P.L.R.) § 901(b). Under New York law, liquidated damages are waivable, meaning that Ramirez could choose not to seek these damages in her state-court action. *See, e.g., Andrade v. JP Morgan Chase Bank, N.A.*, No. 08-CV-3703 (RRM), 2009 WL 2899874, at *2 (E.D.N.Y. Sept. 4, 2009); *Krichman v. J.P. Morgan Chase & Co.*, No. 06-CV-15305 (GBD), 2008 WL 5148769, at *2 (S.D.N.Y. Dec. 8, 2008); *Klein v. Ryan Beck Holdings, Inc.*, No. 06-CV-3460 (WCC), 2007 WL 2059828, at *2–3 (S.D.N.Y. July 13, 2007), *as amended* (July 20, 2007).[10]   The Court therefore does not include liquidated damages in estimating the

---

[10] New York courts do not appear to have considered whether liquidated damages remain waivable

amount in controversy in this case.[11]

Ramirez objects to the above analysis on several grounds. First, Ramirez contends that the 17-week length of her internship is "grossly exaggerate[d]." Pl. Reply Mem. at 2. Ramirez claims that most internships are in fact much shorter—lasting only the length of one college semester, or approximately 12 weeks. Ramirez's complaint, however, alleges that she worked at ODLR from "approximately January of 2009 through April of 2009"—a period of 17 weeks. Compl. ¶ 7. On the basis of this allegation, which is not contradicted by any other facts alleged in Ramirez's complaint, ODLR could reasonably infer that Ramirez was seeking to recover unpaid wages for 17 weeks of unpaid work. Second, Ramirez argues that any damages estimate should "include at least a thirty to sixty minute break for lunch." Pl. Reply Mem. at 2. This allegation, however, is not included in Ramirez's complaint, and ODLR could reasonably estimate damages without assuming that plaintiffs in the proposed class received any break for lunch. Third, Ramirez argues that the amount in controversy should not include statutory penalties for wage notice and wage statement violations, as C.P.L.R. § 901(b) prevents a plaintiff from maintaining a class action in which statutory penalties are sought. *See* Pl. Reply Mem. at 3–4. This argument is also unpersuasive: Ramirez's complaint specifically asserts a cause of action for "New York Wage Theft Notice" and, under the heading for this cause of action, claims that ODLR "has violated

---

in light of the 2009 and 2011 amendments to the NYLL, which created a rebuttable presumption that a plaintiff is entitled to liquidated damages. Since these amendments, however, the New York Court of Appeals has held that treble damages available under a similarly worded statute are not mandatory, in part because such damages are "only applied where defendant fails to disprove willfulness." *Borden v. 400 E. 55th St. Assocs., L.P.*, 23 N.E.3d 997, 1002–03 (N.Y. 2014). The Court of Appeals further held that "[w]here a statute imposes a nonmandatory penalty, plaintiffs may waive the penalty in order to bring the claim as a class action." *Id.* at 1002.

[11] The Court's estimated amount in controversy also does not include any damages for unpaid overtime compensation, which Ramirez did not seek in her complaint.

NYLL § 195 and is liable to Plaintiffs and other members of the putative class for the penalties set forth in New York Labor Law § 198." Compl. ¶ 60. While these statutory penalties, like liquidated damages, may be waivable under New York law, Ramirez did not waive them here.[12]   Thus, statutory penalties for ODLR's alleged wage notice and wage statement violations are properly included in determining the amount in controversy.

In sum, the Court concludes that ODLR has demonstrated a "reasonable probability" that the amount in controversy in this action exceeds CAFA's jurisdictional minimum of $5 million.

## C. Local Controversy and Home State Exceptions

Ramirez next argues that, even if CAFA's jurisdictional requirements are met, the Court must remand this action under CAFA's "local controversy" and "home state" exceptions. The Court again disagrees.

"Under the 'local controversy' exception, Plaintiff must demonstrate, *inter alia*, that more than two-thirds of the putative class members are citizens of the state where the action was filed." *Fields,* No. 13-CV-6520 (GBD), 2014 WL 3877431, at *3 (citing 28 U.S.C. § 1332(d)(4)(A)). Similarly, under the "home state" exception, a district court must decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). "These mandatory exceptions to CAFA jurisdiction are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and

---

[12] Under the NYLL, the remedies available for violations of the wage notice and wage statement provisions appear limited to statutory penalties, declaratory relief, injunctive relief, attorney's fees, and costs, although a Court may "also award other relief." *See* N.Y. Lab. Law § 198(1-b), (1-d). Because Ramirez asserted a cause of action for "New York Wage Theft Notice," Compl. ¶¶ 54–60, and did not seek declaratory or injunctive relief, it is difficult to imagine that Ramirez sought relief other than statutory penalties for the alleged wage notice and wage statement violations.

allowing the state courts to retain cases when the controversy is strongly linked to that state." *Henry*, No. 13-CV- 5031 (PGG), 2014 WL 1224575, at \*4 (quoting *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 355 (E.D.N.Y. 2008)).

"The Second Circuit has not resolved the level of proof required to establish an exception to CAFA jurisdiction." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 962 (S.D.N.Y. 2014). Other circuits and several district courts in the Second Circuit, however, appear to agree that a "preponderance of the evidence" standard applies. *See, e.g., Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 388 (6th Cir. 2016) ("[T]he parties and every circuit to have addressed this issue all agree that the party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence."); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013); *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (per curiam); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010); *see also Hart*, 967 F. Supp. 2d at 962 ("[T]he Court will apply the preponderance of the evidence standard to determine whether a CAFA exception applies."); *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 362 (E.D.N.Y. 2012).[13]  In light of this emerging consensus that a plaintiff must establish by a preponderance of the evidence that a CAFA exception applies, the Court evaluates Ramirez's arguments under a preponderance-of-the-evidence standard.

Under this standard, the Court finds that Ramirez has not demonstrated that two-thirds of

---

[13] At least one district court in this Circuit, however, has applied a "reasonably likely" standard. *See Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 81 (S.D.N.Y. 2006) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York.")).

the proposed class members are citizens of New York. Ramirez has provided no evidence of the citizenship of the proposed class members. Instead, she asserts that it is reasonable to assume that "the majority of class members were residents" of New York during their internships and that "it would be reasonable to assume that if a college student obtains an unpaid internship in the fashion industry in New York, he/she ultimately desires to settle in New York to pursue that career path upon graduation." Pl. Mem. at 13. This assertion is not supported by any specific factual allegations or evidence. *See, e.g.*, *Fields*, No. 13-CV-6520 (GBD), 2014 WL 3877431, at *3 (rejecting the "unsubstantiated theory" that "if a college student seeks an internship in New York in the music or entertainment industry, she will try to return to New York to begin a career in the same industry"). Furthermore, even if the Court accepts Ramirez's estimate that "the majority of class members" resided in New York during their internships and intended to stay there, a "majority" is not enough—Ramirez must demonstrate that at least two-thirds of her proposed class are citizens of New York. *See* 28 U.S.C. § 1332(d)(4)(A), (B). Finally, ODLR has rebutted Ramirez's argument by submitting evidence that approximately 42 percent of the interns in its 2016 class provided permanent addresses in states other than New York. *See* Decl. of Valentina Santos in Opp'n to Mot. to Remand ¶ 3 (Dkt. 22); *see also Fields*, No. 13-CV-6520 (GBD), 2014 WL 3877431, at *3 (finding that the local controversy and home state exceptions did not apply in a wage-and-hour case brought by unpaid interns where the defendants "explain[ed] that among the New York interns in the summer of 2013, over 46% were citizens of other states"). Because Ramirez has failed to demonstrate that two-thirds of the proposed class members are citizens of New York, neither the "local controversy" nor the "home state" exceptions to CAFA removal provide a basis for the Court to remand this action.

17

## D. Interests of Justice Exception

Finally, Ramirez argues that, even if CAFA's mandatory exceptions do not apply, the Court

should decline to exercise jurisdiction as a matter of discretion pursuant to CAFA's "interest of

justice" exception. *See* Pl. Mem. at 15–17. This exception provides:

> A district court may, in the interests of justice and looking at the totality of the
> circumstances, decline to exercise jurisdiction . . . over a class action in which
> greater than one-third but less than two-thirds of the members of all proposed
> plaintiff classes in the aggregate and the primary defendants are citizens of the State
> in which the action was originally filed based on considerations of—
>
> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which
> the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid
> Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the
> class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was
> originally filed in all proposed plaintiff classes in the aggregate is substantially
> larger than the number of citizens from any other State, and the citizenship of
> the other members of the proposed class is dispersed among a substantial
> number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1
> or more other class actions asserting the same or similar claims on behalf of the
> same or other persons have been filed.

28 U.S.C. § 1332(d)(3). While this exception is discretionary, "it too is 'designed to address

similar concerns regarding truly local controversies in cases where neither mandatory exception

applies.'" *Hart*, 967 F. Supp. 2d at 962 (quoting *Sorrentino*, 588 F. Supp. 2d at 355). "Removal

may be appropriate even where the majority of these factors favor Plaintiff." *Fields*, No. 13-CV-

6520 (GBD), 2014 WL 3877431, at *4 (S.D.N.Y. Aug. 4, 2014).

On the current record, the Court does not find that the interests of justice weigh in favor of remand under Section 1332(d)(3). As an initial matter, it is not clear whether Ramirez has adequately demonstrated that the threshold requirements of this exception are satisfied. In particular, because Ramirez has provided no evidence of the citizenship of the proposed class members, the Court cannot determine whether "greater than one-third" of the proposed class members are citizens of New York. 28 U.S.C. § 1332(d)(3). As a result, it is not clear whether this exception even gives the Court the authority to remand this action in its discretion.

Assuming the "interests of justice" exception applies, however, the Court does not find that the considerations enumerated in Section 1332(d)(3) weigh in favor of remand. Ramirez's claims "involve matters of national or interstate interest," as the use of unpaid interns, including at major international firms such as ODLR, has generated substantial attention among courts and commentators in recent years. *Id.* § 1332(d)(3)(A); *see Fields*, 2014 WL 3877431, at \*5 ("Use of unpaid college interns by companies like Defendants is commonplace and court cases like this have garnered national media attention."). Moreover, on the present record, it is not clear whether the number of New York citizens in the proposed class is "substantially larger than the number of citizens from any other State," or whether the citizenship of non-New York members of the proposed class is "dispersed among a substantial number of States." 28 U.S.C. § 1332(d)(3)(E). As discussed above, Ramirez has not provided specific allegations or evidence of the citizenship of the proposed class members. And while ODLR submitted a declaration indicating that 42 percent of its 2016 interns provided permanent addresses in states other than New York, this declaration does provide the number of interns from each state other than New York. Without this information, the Court cannot compare the number of New York citizens in the proposed class to "the number of citizens from any other State." *Id.* Nor can the Court determine the "number of

States" among which the citizenship of non-New York class members is "dispersed." *Id.* Considering the national interest in the issues raised by this litigation and the absence of evidence that New York citizens constitute a "substantially larger" portion of the proposed class than citizens of any other state, the Court does not view this case as a "truly local controvers[y]" that should be remanded to state court under Section 1332(d)(3). *Hart*, 967 F. Supp. 2d at 962 (quoting *Sorrentino*, 588 F. Supp. 2d at 355).

The Court recognizes, however, that some of the factors outlined in Section 1332(d)(3) weigh in Ramirez's favor. First, Ramirez's claims are governed by New York law. *See* 28 U.S.C. § 1332(d)(3)(B). Second, although Ramirez waived liquidated damages to maintain a class action in state court, there is no clear indication that Ramirez pleaded this class action "in a manner that seeks to avoid Federal jurisdiction." *Id.* § 1332(d)(3)(C). Third, there is a "distinct nexus" between New York and the proposed class members, the alleged harm, and the defendants: the NYLL violations alleged here occurred in New York, where many of the proposed class members appear to have resided and where ODLR is headquartered. *Id.* § 1332(d)(3)(D). Nonetheless, in light of the national interest in the matters involved in this case and the potentially national composition of the proposed class, the Court does not find the "interests of justice" weigh in favor of remand.

Finally, although the Court is sensitive to Ramirez's concern regarding forum-shopping, particularly given the timing of ODLR's motion relative to recent decisions on the classification of unpaid interns under the Fair Labor Standards Act and the NYLL, *see Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2015), this concern does not ultimately undermine the Court's conclusion that remand of this action is improper under existing law.

**CONCLUSION**

For the foregoing reasons, Ramirez's motion to remand this action is denied. This decision does not preclude Ramirez from making a new application to remand, on a more complete record, at a future date. This case remains referred to Magistrate Judge Freeman for general pretrial practice.

The Clerk of Court is respectfully directed to close the motion pending at Docket No. 16.

SO ORDERED.

Dated:   May 12, 2017
         New York, New York

Ronnie Abrams
United States District Judge

21